UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACQUELINE ELLIS-TATE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-650 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

**OPINION ON SUMMARY JUDGMENT**

Plaintiff Jacqueline Ellis-Tate filed this case under the Social Security Act, 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her request for disability benefits. The parties have filed cross motions for summary judgment. (Dkts. 14, 20). Having considered the parties' submissions, the administrative record, and applicable law, the court determines that Ellis-Tate's motion must be denied, and the Commissioner's motion affirmed.[1]

**I.   Background**

On April 17, 2002, Ellis-Tate applied for benefits under Title II of the Social Security Act claiming disability since July 26, 2001 due to fibromyalgia, thyroid disease, back problems, Lyme disease, high blood pressure, and numbness in her extremities. (Tr. 84).

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment. (Dkt. 11).

Ellis-Tate's claim was denied initially and on reconsideration. (Tr. 32, 56). After a hearing held on August 3, 2004, the administrative law judge (ALJ) found that Ellis-Tate was not disabled (Tr. 64). On December 3, 2004, the Appeals Council granted Ellis-Tate's request for review and remanded the case to the ALJ for a new hearing and decision.[2] (Tr. 66-67). The ALJ held another hearing and issued a new decision on April 12, 2005 finding that Ellis-Tate was not disabled because her impairments did not meet or equal in severity the requirements of any of the medical listings in Appendix 1, subpart P, Regulations No. 4. (Tr. 15-25). Ellis-Tate filed a request for review. (Tr. 7). However, the Appeals Council declined to review the ALJ's decision (Tr. 4), making the April 12, 2005 ALJ decision final. Ellis-Tate filed suit in this court on February 28, 2006.

## II. Applicable Law

### A. Standard of Review

Section 405(g) of the Social Security Act sets forth the standard of review in this case. Federal courts review a decision denying Social Security benefits to determine whether (1) the Commissioner applied the proper legal standard and (2) the decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Masterson v.*

---

[2] The Appeals Council's remand order directed the ALJ (1) to give consideration to the treating source opinions pursuant to the provisions of 20 CFR 404. 1527; (2) obtain additional evidence concerning Ellis-Tate's fibromyalgia, chronic fatigue and thyroid disorder; (3) further evaluate Ellis-Tate's subjective complaints; (4) give further consideration to Ellis-Tate's maximum residual functional capacity; (5) and if warranted obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Ellis-Tate's occupational base. (Tr. 66-67).

*Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not re-weigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The courts strive for judicial review that is deferential but not so obsequious as to be meaningless. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

    **B.**    **Standard for Determining Disability and the Commissioner's Decision**

In order to qualify for disability benefits, a plaintiff must prove he has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The ALJ must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

    1.    Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

    2.    Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity (RFC).

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

The ALJ engaged in the five step procedure outlined above. He found that Ellis-Tate had not engaged in substantial gainful activity since the onset date of July 26, 2001; that Ellis-Tate had degenerative disc disease, status post lumbar fusion, fibromyalgia, hypertension, high blood pressure, gastroesophageal reflux disease, colitis, and status post gallbladder removal; but that her impairments was not severe to meet equal one of the impairments listed in Appendix 1; and that Ellis-Tate could return to her past relevant work as a documentation control clerk or as a blue print clerk. Based on these findings, the ALJ concluded that Ellis-Tate was not disabled as defined by the Social Security Act.

### III. Analysis

Ellis-Tate's motion for summary judgment raises three issues for review: first, that the ALJ erred because he rejected the opinions of her treating physician and her treating

specialist without proper analysis; second, that the ALJ did not provide sound reasons for adopting the opinion of the medical expert that she had a sedentary residual functional capacity and that her pain does not preclude sedentary work; and third, that the ALJ failed to consider her medications in finding that she was not disabled.

### A.     ALJ's Rejection of Treating Physicians' Opinions

Ellis-Tate argues that the ALJ erred in rejecting the opinions of her treating physician, Dr. Susie Davis-Roberson, and her treating specialist Dr. Ali Azimpoor without proper analysis under 20 C.F.R. 404.1527(d). The ALJ reviewed and summarized Dr. Davis-Roberson and Dr. Azimpoor's assessments[3] of Ellis-Tate's abilities to do work-related activities, but rejected their opinion that Ellis-Tate could sit or stand for less than an hour each day. (Tr. 23). He concluded that their treating records did not support the drastic limitations asserted in their assessments. (Tr. 23). While the ALJ must give more weight to

---

[3] The ALJ noted that Dr. Davis-Roberson completed two assessments and found that Ellis-Tate could sit for one hour in an eight hour day, that she could stand and walk for zero to one hour each, and that she could lift and or carry only five pounds. The ALJ further noted that Dr. Davis-Roberson stated in a fibromyalgia residual function capacity questionnaire that in an eight hour day, she could only sit for two hours and walk for one to two hours and that she could frequently lift ten pounds and rarely lift twenty pounds. Dr. Davis-Roberson also stated that Ellis-Tate was capable of low stress jobs, and that she would likely be absent from work as a result of her impairments or treatment more than four days a month. The ALJ further noted that on December 18, 2002 Dr. Azimpoor found that Ellis-Tate could not sit, stand, or walk at all in an eight hour day, and that she could lift up to ten pounds. Dr. Azimpoor stated that Ellis-Tate was not released to work for the next six months and that she needed to rest during the day. The ALJ observed that on January 23, 2003 Dr. Azimpoor stated that Ellis-Tate needed to be off work for approximately one year following the surgery and on October 3, 2003, he stated that she "cannot return to work."

a treating physician's opinion than other medical opinions, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F. 3d at 455. Administrative regulations provide that when an ALJ declines to give a treating physician's opinion controlling weight, the ALJ must consider numerous factors set forth in the regulations,[4] and must give good reasons for the weight assigned to the treating source's opinion. 20 C.F.R. 404.1527(d)(2); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).

Here, because there was existing reliable medical evidence from another examining physician, Dr. Martin Steiner (Tr. 18, 516), controverting Dr. Davis-Roberson and Dr. Azimpor's assessments, the ALJ was not obligated to perform the detailed analysis set forth in 20 C.F.R. § 404.1527(d)(2)-(6). *See Newton*, 209 F.3d at 453. The ALJ noted that Dr. Steiner completed a medical source statement on Ellis-Tate's physical abilities to do work related activities (Tr. 18), which concluded that Ellis-Tate's ability to lift, carry, sit, and stand were not affected by her impairment. (Tr. 513-16). Nonetheless, the ALJ mentioned the six factors in 20 C.F.R. 404.1527(d)(2) and explained his reasons for discounting the opinions of Dr. Davis-Roberson and Dr. Azimpoor. He noted that Dr. Azimpoor stated that Ellis-Tate's condition was "real good" following her lower back surgery, and that although she had

---

[4] The factors include (i) the length of the treatment relationship and frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the relevant evidence such as medical signs and laboratory findings to support the opinions; (iv) the consistency of the particular opinion with the rest of the record as a whole; (v) whether the medical opinion is given by a specialist about medical issues related to his area of speciality; and (vi) any other relevant factors. *Newton v. Apfel*, 209 F.3d 448, 454 (5th Cir. 2000); 20 C.F.R. §§ 404.1527(d); SSR 96-2p (discussing SSA regulations on giving weight to treating physicians' opinions).

cervical spondylotic changes and a herniated nucleus pulposus, surgery was not warranted. (Tr. 41).[5] The ALJ also noted that on October 30, 2003 Dr. Azimpoor examined Ellis-Tate and found that she was doing better following surgery and there was no focal deficit or complaint, and the x-rays showed progression of the fusion process. (Tr. 41). Accordingly, the ALJ concluded that Dr. Azimpoor's "treating records, which he prepared for his own use are more persuasive than the assessment forms he prepared to support the claimant's allegation of disability." The ALJ also explained that nothing in Dr. Davis-Roberson's treating records demonstrated severe symptoms limiting Ellis-Tate to zero hours of siting or standing in an eight hour day. (Tr. 23).

Moreover, the ALJ was not required to give controlling weight to Dr. Davis-Roberson and Dr. Azimpoor's opinions that Ellis-Tate was unable to work. The Fifth Circuit has repeatedly held that an opinion that a claimant is unable to work is not the type of treating physician's opinion that is entitled to controlling weight. *Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) ("A statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act; that

---

[5] Ellis-Tate argues that Dr. Azimpoor's statements are taken out of context and are inconsistent with the medical record. However, any conflicts in the evidence are for the Commissioner and not the courts to resolve. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). The reviewing court may not reweigh the evidence or substitute its judgment for that of the administrative fact-finder, even if the reviewing court views the evidence as preponderating otherwise. *Id.*

conclusion may be determined only by the [Commissioner]."); *Frank v. Barnhart*, 326 F. 3d 618, 620 (5th Cir. 2003).

### B. ALJ's Credibility and Residual Function Capacity Determination

Ellis-Tate complains that the ALJ provided no explanation for accepting the medical expert Dr. Charles Murphy's assessment that she had the residual functional capacity (RFC) to perform sedentary work, notwithstanding her subjective pain complaints. An ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Moreover, the ALJ's credibility determination is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

Here, the ALJ determined that Dr. Murphy's opinion that Ellis-Tate could perform sedentary work was supported by the objective clinical findings and consistent with the evidence as a whole. (Tr. 20). The ALJ did not just rely on the testimony of Dr. Murphy in determining Ellis-Tate's residual functional capacity, but also considered the medical evidence in the record, Ellis-Tate's testimony, observations of her at the hearing, and her subjective symptoms, including pain and functional limitations as required by Social Security Ruling 96-7p and C.F.R. 404.1529. (Tr. 20-22). The ALJ explained that the objective clinical findings did not support Ellis-Tate's alleged symptoms or functional limitations. Reviewing medical records from Ellis-Tate's treating physicians Drs. Azimpoor, Steiner, and Gibson, the ALJ found that Ellis-Tate had no neurological deficits, no significant orthopedic

abnormalities, and no serious dysfunctioning of the bodily organs that would preclude sedentary work. (Tr. 21).

The ALJ also considered Ellis-Tate's pain on her ability to perform sedentary work. He noted that none of Ellis-Tate's treating notes showed the presence of uncontrolled pain (Tr. 21) and that her subjective symptoms were not credible to the extent that she would be precluded from performing sedentary work. (Tr. 24). The ALJ further determined that Ellis-Tate's daily activities are consistent with an ability to perform sedentary work. While Ellis-Tate testified that she could not do any house work, she reportedly could help with household chores, go grocery shopping, put the trash out, walk to the mailbox, put her clothes on, pay her bills, attend church, and exercise. (Tr. 21, 22). Accordingly, the ALJ determined that Ellis-Tate's testimony that she could not perform sedentary work was not wholly credible or supported by the evidence as a whole. (Tr. 23-24). This conclusion is supported by substantial evidence.

### C.    ALJ's Consideration of Ellis-Tate's Medications

Ellis-Tate asserts that the ALJ violated 20 C.F.R. § 404.1529 by not considering the side effects of her medications. The regulations require that the ALJ must first determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain. 20 C.F.R. § 404.1529(b); Social Security Ruling 96-7p. If the ALJ finds such an impairment, he must then consider a variety of factors, which include the "type, dosage, effectiveness, and side effects of any medication

. . . taken to alleviate pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv); *see also Ward v. Barnhart*, 192 Fed.Appx. 305, 309-10 (5th Cir. 2006). To be considered disabling, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Subjective complaints of pain must also be corroborated by objective medical evidence. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

Here, the ALJ concluded that while there was no doubt that Ellis-Tate had some pain and discomfort associated with her condition, her symptoms were found to be mild to moderate at most. (Tr. 23). The ALJ also determined that her allegations concerning her subjective symptoms were not credible to the extent that she would be precluded from performing sedentary work. (Tr. 24). Therefore, because the ALJ found that there was no medical impairment capable of producing the alleged pain, he was not required to further evaluate the side effects of her pain medications. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). This determination is entitled to deference.

Nonetheless, the ALJ mentioned Ellis-Tate's pain medications, noting that she took Vicodin, Tylenol, Soma, Neurontin, and Elavil, and that she reported having headaches, blurred vision, and numbness. (Tr. 20). Although the ALJ did not mention the exact dosage, effectiveness, or specific side effects of her pain medications, Ellis-Tate failed to produce

any objective medical evidence supporting her complaints about the medications. *See Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992). When asked about her medications, Ellis-Tate testified that she takes "lots of medications for sleep, pain, thyroid, [and] fibromyalgia" and that the medications never get her out of pain and that the medications cause her "to rest." (Tr. 663). She also testified that her medications have the side effects of dizziness, blurred vision, and drowsiness. (Tr. 648). Despite her testimony, Ellis- Tate has not shown that additional consideration of her medications would have led to a different conclusion than the one reached by the ALJ. Therefore, failing to consider the dosage, effectiveness, and side effects of Ellis-Tate's pain medications would at most amount to harmless error. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (explaining that the court will not vacate a judgment unless the substantial rights of a party have been affected, and that the major policy underlying the harmless error rule is to preserve judgments and avoid waste of time). Accordingly, Ellis-Tate's assertion that the ALJ improperly failed to considered her medications is without merit.

**IV. Conclusion**

The Commissioner's decision is supported by substantial evidence in the record and is based on proper legal standards. Therefore, plaintiff's motion for summary judgment is DENIED, and summary judgment will be granted in favor of the Commissioner.

Signed at Houston, Texas on July 13, 2007.

_____
Stephen Wm Smith
United States Magistrate Judge